**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REVEREND EARL L. HARRIS, | : | |
| NEVIN MINDLIN, and ERIC | : | NO. 1:11-CV-2228 |
| JENKINS, | : | |
| | : | |
| Plaintiffs, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| GOVERNOR THOMAS W. | : | |
| CORBETT and DAVID UNKOVIC, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**May 2, 2012**

I.    **INTRODUCTION**

This matter is before the Court in a unique procedural posture. Presently

pending are the Plaintiffs' Motion for a Preliminary Injunction (Doc. 18) and the

Defendants' Motion for Judgment on the Pleadings. (Doc. 10). In reviewing the

parties' respective Motions, the Court opined, to the agreement of the parties, that

the most appropriate course was to hold a hearing permitting the Plaintiffs to

present testimony to establish standing, noting that we must decide preliminary

justiciability matters as a precursor to any consideration of the merits of this

dispute. (Docs. 27, 48). A hearing limited in scope to the question of justiciability

was held on March 21, 2012, and the Court ordered an expedited briefing schedule

that same day. (Doc. 53).  The Court is now in receipt of both parties' post-hearing

submissions and is prepared to rule on the pending Motions.

## II.    FACTUAL HISTORY

It is no secret that the City of Harrisburg ("City" or "Harrisburg") stands on

the verge of a debilitating financial collapse, burdened with well over $300

million in debt, and that it has already ceased payments on some of its obligations.

Likewise, it is well known that this state of financial despair is largely attributable

to a botched retrofit of the City's municipal incinerator nearly a decade ago. It is

against this daunting factual backdrop that the instant action was initiated.

Because the complex and unfortunate factual predicate leading to this lawsuit is

entirely evident to the parties—and the public at large—we shall derive only the

most pertinent facts from the record and recite them here.

The Plaintiffs are three long-time citizens and recognized civic leaders

residing in the City of Harrisburg. Plaintiff Reverend Earl L. Harris ("Harris") is a

pastor at St. Paul Baptist Church on North 17th Street in Harrisburg. (Doc. 1, ¶ 5).

Plaintiff Nevin Mindlin ("Mindlin") is a former Harrisburg mayoral candidate who

has written and spoken extensively on the state of Harrisburg's financial distress.

(*Id.* ¶ 6).  Plaintiff Eric Jenkins is the president of the City's firefighters' union.

(*Id.* ¶ 7). The Defendants are Thomas W. Corbett, Governor of the Commonwealth

2

of Pennsylvania, ("Defendant Governor Corbett") and David Unkovic, the City's

court-appointed receiver, ("Defendant Receiver"), both of whom are named in

their official capacities.[1] (*Id.* ¶¶ 8-9).

The Financially Distressed Municipalities Act, 53 P.S. §§ 11701.101-.501

("Act 47"), is a statutory mechanism by which a financially distressed municipality

in Pennsylvania can request technical and financial assistance from the state

government. On October 1, 2010, the City of Harrisburg filed an application with

the Pennsylvania Department of Community and Economic Development

("DCED"), seeking a determination that the City was a "financially distressed

municipality" and taking the first step toward entering the Act 47 program. (Doc.

1, ¶ 25). On December 15, 2010, the DCED granted the City's application,

designating Harrisburg as a financially distressed municipality and admitting the

City into the Act 47 financial assistance program. (*Id.* ¶ 26). Under Act 47, as it

then existed, the DCED or its designee would formulate a recovery plan and

present it to the City; if the City refused to adopt the recovery plan, the state's

financial assistance would simply end. (*Id.* ¶ 27). On July 19, 2011, the Harrisburg

---

[1] By letter dated March 30, 2012, Defendant Unkovic resigned from his appointed post as the City's Act 47 Receiver. As of the date of this decision, a successor has not been nominated or appointed.

3

City Council rejected the Commonwealth's proposed recovery plan by a 4-3 vote. (*Id.* ¶ 43).

On October 10, 2011, Defendant Governor Corbett signed into law legislation amending Act 47 ("Act 47 Amendments" or "the Amendments").[2] The Act 47 Amendments altered Act 47 in several critical ways. Section 602(a) authorizes the Governor to designate financially distressed municipalities upon consideration of several statutorily-enumerated factors and, at his discretion, to make a declaration of fiscal emergency. *See* 53 P.S. § 11701.602(b) (as amended). Section 702 permits the Governor to "direct the secretary [of the DCED] to file a petition in [the] Commonwealth Court to appoint" a receiver to the financially distressed city. *Id.* § 11701.702(a). In such an event, the Act 47 Amendments authorize the Governor, or his designee, to collect funds on behalf of the city and its authorities, to obtain emergency financial aid, to enter into contracts and agreements on behalf of the city, and to exercise any other power necessary to

---

[2] Plaintiffs' Complaint is riddled with inflammatory allegations of race- and class-based bias and discrimination throughout the legislative amendment process. These allegations implicate not only the Defendants but other nonparty members of the state and local governments. We are compelled to note that the allegations are entirely unfounded on the record before us and appear to be nothing more than an attempt to sensationalize this litigation. We admonish Plaintiffs that such incendiary statements are, in the Court's view, both abhorrent and unhelpful. In any event, because the Plaintiffs have not established these allegations as relevant to their alleged due process or equal protection injuries in their post-hearing submissions, we decline to further address them.

4

"ensure the provision of vital and necessary services" to the city. *Id.* §

11701.604(a)(1)-(5). The Act 47 Amendments altered the term "vital and

necessary services" to include fulfillment of payment of the city's debt or other

financial obligations. *See* § 11701.601 (definitions).

On October 24, 2011, by the authority vested in him under Act 47, as

amended, Defendant Governor Corbett executed a Declaration of Fiscal

Emergency for the City of Harrisburg. (Doc. 1, Ex. 2). The Commonwealth Court,

on petition and nomination of Defendant Governor Corbett, appointed Defendant

David Unkovic ("Defendant Receiver") as the Act 47 receiver to the City, and on

February 6, 2012, the Defendant Receiver filed his Recovery Plan with the

Commonwealth Court. The Honorable Bonnie J. Leadbetter of the Commonwealth

Court preliminarily approved the Recovery Plan by Order dated March 9, 2012.

The declaratory action *sub judice* was initiated by a Complaint filed

December 1, 2011, shortly after the Act 47 Amendments became effective. (Doc.

1).  The Plaintiffs contend that Act 47, as amended, and the Recovery Plan

proposed and approved thereunder, violate their rights to equal protection and due

process under the United States Constitution and, further, violate the Pennsylvania

Constitution's proscription against "special laws." (Doc. 1). They seek to have this

Court declare Act 47, as amended, unconstitutional, and to permanently enjoin the

Defendants from enforcing Act 47 or implementing any provision of the Recovery Plan promulgated thereunder. (Docs. 1, 18). On February 6, 2012, the Defendants filed their Answer to the Complaint (Doc. 9) simultaneously with their pending Motion for Judgment on the Pleadings. (Doc. 10). The Defendants contend that the Plaintiffs have failed to overcome preliminary justiciability matters and, in any event, have failed to claim violation of a cognizable constitutional right. (Doc. 10).

On February 23, 2012, the Plaintiffs filed the instant Motion for a Temporary Restraining Order and/or Preliminary Injunction. (Doc. 18). A telephonic conference call was held on February 27, 2012, and on February 28, 2012, the Court issued an Order denying the request for a temporary restraining order and scheduling an injunction hearing for March 21, 2012. (Doc. 27). At that proceeding, the Court heard testimony from several witnesses, including the three Plaintiffs, limited solely to the Court's preliminary justiciability concerns.[3]

Plaintiff Harris testified that he is employed as a pastor, serving a congregation in the City of Harrisburg, and that he pays both earned income and real estate taxes and uses the City's parking facilities. (Hr'g Tr., 27:14-22, 30:17-

---

[3] In addition to the three Plaintiffs, the Court heard testimony from Harrisburg City Controller Daniel Miller, Harrisburg City Councilman Brad Koplinski, and the Defendant Receiver, David Unkovic. Miller and Koplinski testified as to their understanding of the City's financial state, the Defendant Receiver's role in facilitating recovery, and the interplay between the City's authority and that of the Defendant Receiver.

6

23). He also testified that for over a year, the City has been aware of a sinkhole on a street near his home, and that said sinkhole is dangerous and has yet to be repaired. (*Id.* at 29:12-16). Finally, Plaintiff Harris explained that, in his opinion, if the earned income and real estate taxes were increased consistent with the Recovery Plan's recommendations, the City would experience "more flight" with "everybody who can getting out." (*Id.* at 31:1-32:8).

Plaintiff Mindlin likewise testified that he is a resident of the City of Harrisburg who pays real estate and earned income taxes and uses the City's parking facilities. (*Id.* at 37:18-25, 42:3-9). Plaintiff Mindlin opined that any increase in taxes or parking facility expenses would result in "people mov[ing] out" and leaving the remaining citizens to carry increased financial burdens. (*Id.* at 45:7-17). Plaintiff Jenkins also testified that he is a taxpaying resident of the Harrisburg. (*Id.* at 48:4-7). Moreover, he testified that he is a firefighter with the City and president of the firefighters' local union, Local 428. (*Id.* at 48:9-17). Plaintiff Jenkins contends that if the minimum recall and minimum manning provisions were eliminated as proposed by the Recovery Plan, less firefighters would be present at the scene of any given fire within the City, placing himself and other firefighters in harm's way. (*Id.* at 54:12-17).

At the close of testimony, the Court issued an expedited post-hearing briefing schedule, directing counsel to limit their argument to the Court's justiciability concerns. (Doc. 53). The Court is now in receipt of both parties' post-hearing submissions (Docs. 55, 57) and is prepared to rule on the pending Motions.

## III. STANDARD OF REVIEW

A federal court must satisfy itself that the jurisdictional prerequisites of Article III of the United States Constitution are fulfilled prior to deciding the merits of any suit brought before it, regardless of whether the parties have independently raised the question of justiciability. *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). Such questions must be addressed and answered as a precursor to any consideration of the merits of this dispute. *Id.*

Article III of the United States Constitution limits the jurisdiction of the federal courts to those cases involving actual cases or controversies. U.S. Const. art. III, § 2. One fundamental element of this requirement is that a plaintiff must establish that they have standing to sue; if he fails to do so, the federal court must dismiss the action for lack of subject matter jurisdiction. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011). The essential question of standing "is whether the

8

litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.*

The standing requirement implicates both constitutional and prudential concerns, and both must be satisfied before reaching the merits of the dispute. *See Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-78 (3d Cir. 2000). The Third Circuit succinctly articulated the constitutional standing requirements as follows:

> (1) the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
> (2) there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Storino*, 322 F.3d at 296.

The prudential considerations "overlap, but extend beyond our inquiry under Article III." *Society Hill Towers*, 210 F.3d at 177-78. Thus, in additional to the constitutional inquiry under Article III, we are guided by the following prudential concerns:

> (1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the

9

> legal rights or interests of third parties; (2) even when
> the plaintiff has alleged redressable injury sufficient to
> meet the requirements of Article III, the federal courts
> will not adjudicate abstract questions of wide public
> significance which amount to generalized grievances
> pervasively shared and most appropriately addressed in
> the respective branches; and (3) the plaintiff's complaint
> must fall within the zone of interests to be protected or
> regulated by the statute or constitutional guarantee in
> question[].

*Id.* Only when the court has satisfied itself that each of the constitutional and

prudential requirements of the standing inquiry have been fulfilled may it proceed

to addressing the merits of the dispute.

## III.   DISCUSSION

The Plaintiffs broadly assert that Act 47, as amended, and the Recovery

Plan operate in tandem to deprive them, and on a larger scale, the entire citizenry

of Harrisburg, of their valuable constitutionally-protected rights by diluting the

effectiveness of their municipal votes. Plaintiffs argue that "it is the diminishment

of the effectiveness of plaintiffs' municipal franchise that establishes plaintiffs'

standing to maintain the instant action." (Doc. 55, p. 7). Plaintiffs insist that their

allegations of a dilution of their right to vote are sufficient to establish standing to

bring a federal lawsuit seeking an injunction of the Recovery Plan and trigger a

ruling that Act 47, as amended, is unconstitutional. In addition to their voting

rights argument, the Plaintiffs also contend that their testimony has established

taxpayer standing. We address each of these arguments *seriatim*.

### 1.     The Plaintiffs' Right to Vote

The Plaintiffs spill much ink contending that Act 47, as amended, and the

Recovery Plan debase their fundamental right to vote in violation of both the

Pennsylvania and United States Constitutions. While Plaintiffs' arguments are less

than pellucid, it appears that they are, boiled down to their purest form, twofold:

first, that the Plaintiffs, personally and directly, have suffered an injury to their

individual rights to vote and, second, that the citizenry of Harrisburg has suffered

an injury, collectively, to its right to vote in comparison to citizens of other Third

Class Cities within the Commonwealth. We will briefly address each of these

contentions, beginning with the Plaintiffs' individual standing arguments.

### a.     The Individual Plaintiffs

Plaintiffs allege that the legislature's delegation of legislative power to

Defendant Corbett and, ultimately, Defendant Receiver, coupled with the

legislature's supposed violation of Article III, § 32 of Pennsylvania's Constitution,

"directly impair[] the effectiveness of plaintiffs' municipal franchise by rendering

the municipal vote in Harrisburg virtually meaningless." (Doc. 55, p. 6). Plaintiffs

rely on the seminal "one person, one vote" case, *Baker v. Carr*, 369 U.S. 186

(1962), for the proposition that "[v]oters who allege facts showing disadvantage to themselves as individuals have standing to sue." *Id.* at 205-06. In *Baker*, the Court held that plaintiffs who asserted "a plain, direct and adequate interest in maintaining the effectiveness of their votes" demonstrated an injury in fact sufficient to withstand the defendants' justiciability challenges. *Id.* at 207-08.

The Plaintiffs' reliance on *Baker*'s language in the case *sub judice* is misplaced. *Baker* conferred standing upon a group of plaintiffs within a particular voting pool whose votes, as a result of a dated legislative apportionment scheme, carried less weight than other members of the same voting pool. *Id.* at 208. There, Supreme Court held that where legislation undermined the effectiveness of the votes of a few members compared to the whole community, those individual, injured members had standing to bring suit. *Id.* at 205-08. Thus, *Baker*'s application is appropriate in a "few among many" situation; that is, where the votes of a few, compared to the many, within *one* voting district are less effective, the few have standing to challenge the law. *Id.*

Critically, the Plaintiffs here fail to allege facts establishing that any of them, as three individual citizens of Harrisburg, have suffered an injury not suffered by other members of the municipal voting population at large, thus removing the case from the reach of *Baker*'s holding and policies. Plaintiffs have

12

altogether failed to "allege facts showing disadvantage to *themselves* as

individuals," and thus fall short of the exact language from *Baker* that they have so

earnestly relied upon. *Id.* at 205-06 (emphasis added).

In order to counter the aforesaid analysis, which is one that Plaintiffs likely

anticipated, they offer two examples of individualized injuries which they allege

are directly attributable to the Act 47 Amendments and the Recovery Plan. First,

Plaintiff Harris contends that, as a result of the Amendments, his elected municipal

government is no longer answerable to him for a dangerous sinkhole outside of his

home, but instead, that he will need to grieve to Defendant Receiver, over whom

he holds no electoral leverage. (Doc. 55, p. 8). Second, Plaintiff Jenkins, president

of Harrisburg's firefighters' union, contends that Act 47 directly injures him in

that the Recovery Plan promulgated thereunder allows the Defendant Receiver to

alter the City's collective bargaining strategies. Unfortunately for them, both of

these allegations are quite attenuated from the Plaintiffs' constitutional claims and

equally insufficient to confer standing upon the Plaintiffs.

First, with respect to Plaintiff Harris's sinkhole,[4] the Plaintiffs' contention

that authority over and responsibility for these municipal level grievances has been

removed from the City Council and granted to the Defendant Receiver, thus

circumventing the Plaintiffs' elected representatives, is patently unsupported by

the very language of Act 47. *See* 53 Pa. Stat. § 11701.605 ("During a fiscal

emergency, the authorities and appointed and elected officials of the distressed

city shall continue to carry out the duties of their respective offices, except that no

decision or action shall conflict with an emergency action plan, order or exercise

of power by the Governor under section 604."). Act 47, the Amendments to Act

47, and the Recovery Plan are entirely devoid of any direction by the Defendants

related to sinkhole management or other roadway maintenance within the City.

Indeed, Councilman Koplinski testified that the City retains exclusive control over

---

[4] Plaintiffs' sinkhole argument has so many contingencies that it almost begs for illustration via a flowchart, which our limited space and format unfortunately will not permit. To summarize, however, Plaintiff Harris contends that this harm is not speculative, but actual and imminent, in that while the City has placed cones and a construction horse around the sinkhole, alerting the public to the danger, a mischievous adolescent could remove those cones or the construction horse, resulting in a heightened level of danger for the community. As a result of Act 47, Plaintiff argues, if the cones or horse were removed, someone might be injured, and their sole means of recourse is now to file a grievance with the Defendant Receiver, over whom the Plaintiffs hold no electoral leverage, because their elected officials are rendered powerless by the Act 47 Amendments. As aforestated, in addition to flying in the face of the language of Act 47, the Plaintiffs' contention is also indisputably speculative, riddled with "ifs" and "mights," and accordingly, would be insufficient to support Article III standing for this reason alone. *See Reilly*, 664 F.3d at 43 (finding no standing where "we cannot now describe how [plaintiffs] will be injured in this case without beginning our explanation with the word 'if'").

such spending matters. (Hr'g Test., 21:11-22). Plaintiff Harris's appropriate means of grievance, and hope for redress, remains with his elected officials. Accordingly, this argument fails.

Plaintiff Jenkins' contentions with respect to the collective bargaining process are likewise insufficient to establish an actual or imminent injury-in-fact. The Recovery Plan suggests that an optimal method of increasing fire department efficiency and reducing costs would be to eliminate the minimum recall and minimum manning provisions contained in the current collective bargaining agreements. (Tr. 89:17-19). Plaintiff Jenkins contends that if the minimum recall and minimum manning provisions were eliminated, less firefighters would be present at the scene of any given fire within the City, placing himself and other firefighters in harm's way. (*Id.* at 54:12-17).

This contention, while facially alluring, deteriorates rapidly in light of several facts established at the hearing. Plaintiff Jenkins' own testimony, the testimony of the Defendant Receiver, and the preliminary and fluid nature of the Recovery Plan itself prove to this Court that these purported harms are remote and indisputably speculative. First, Plaintiff Jenkins himself testified that the current union contracts will not expire until December 31, 2016, and thus the alleged harm is over four and one half years removed. (*Id.* at 62:2-4). Moreover, the Defendant

Receiver testified that the Recovery Plan is preliminary in nature, explaining that

FIRE12 and FIRE13, the provisions with which Plaintiff Jenkins takes issue, are

merely recommendations to the City for the negotiation process. (*Id.* at 89:23-

90:5). Critically, Defendant Receiver stated that if the bargaining employees do

not agree to these provisions, they will not become part of the agreement. (*Id.*).  A

mere non-binding recommendation for a hypothetical future course of action,

dependent on the actions of third parties, is irrefutably speculative and insufficient

to establish an injury-in-fact and confer Article III standing. *Reilly*, 664 F.3d at 41-

42 ("Allegations of 'possible future injury' are not sufficient to satisfy Article

III.").[5]

　　　In addition to this evidentiary failure, and as the Defendants aptly observe,

the plain language of the statute in no way "prohibit[s], bar[s], or otherwise

restrict[s] any candidate from running in any election or any voter from voting in

any election." (Doc. 57, p. 3). Ultimately fatal to the Plaintiffs' claims is that the

state has not legislated, limited, harmed, or otherwise impeded the Plaintiffs'

---

[5] Having described the harm allegedly experienced by Plaintiffs Harris and Jenkins, for the sake
of completeness we note that the record and the submissions provide neither example nor
argument with respect to any individual harm allegedly suffered by Plaintiff Mindlin. It is well
known that Plaintiff Mindlin is an active and involved citizen, a respected civic leader, and a
former Harrisburg mayoral candidate, all as established by testimony at the March 21, 2012
hearing. While Plaintiff Mindlin's testimony certainly demonstrates a concern for the financial
well-being of the City of Harrisburg, as we explain at length *infra*, standing alone the same is
insufficient to furnish Article III standing.

individual rights themselves. An objective review of the statutory language clearly reveals that the Amendments and the Recovery Plan limit the rights and authority of the municipality—the City of Harrisburg—and not the citizens of Harrisburg themselves.

Candidly, we are struck by the paltriness of the evidence offered by the Plaintiffs to support their standing argument. Plaintiffs' right to vote for their municipal representatives remains fully intact, and further, the Plaintiffs failed to present evidence that their individual votes are in any way unequal to or less effective than those of other voters in Harrisburg's municipal elections or that they have suffered any other actual and individual harms as a result of the Act 47 Amendments. In a case governed by *Lujan*'s admonition that plaintiffs "not [themselves] the object of the government action or inaction challenge[d]" are subject to a "substantially more difficult" burden, the Plaintiffs have fired well wide of even the most minimal standing mark. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). While we are not sure that any measure of evidence would carry the day for the Plaintiffs, it is quite clear, in this Court's view, that they have fallen woefully short of the bar required to establish Article III standing on their individual claims.

b.      **The Citizens of Harrisburg**

We next turn to Plaintiffs' standing arguments relating to the voting rights of the entire citizenry of Harrisburg. As a threshold matter, we note that the Plaintiffs have not captioned this lawsuit as a class action or averred that they are litigating in a representative capacity on behalf of all other similarly-situated Harrisburg citizens, although this is certainly the form that their argument appears to take. While the Plaintiffs' exact position in this regard remains unclear even after such extensive briefing and argument, it appears that they either intend to litigate on behalf of all Harrisburg citizens or to, in essence, litigate in the shoes of the City of Harrisburg. While the Plaintiffs have failed to expressly classify this action as a representative one, because the bulk of Plaintiffs' argument rests on an alleged harm to the City on a larger scale, we briefly address the Plaintiffs' claim that the harm to all Harrisburg citizens confers standing upon them as three individual citizens.

Plaintiffs' argument on this point again returns to *Baker*, offering analogies and urging a similar decision. (*See id.* (quoting *Baker*, 369 U.S. at 205-06)). Plaintiffs strain to convince us that *Baker*'s principles apply not only where votes are comparatively unequal within one voting pool but also where votes are unequal across several different voting communities–indeed, across different

18

elections for different governments. Plaintiffs argue that *Baker*'s policy requires voters of one financially distressed municipality within the state of Pennsylvania to be treated exactly equal to those of other financially-distressed municipalities. This is not the *Baker* proposition, however, and an extension of its holding to the instant facts is wholly unsupported by the policy considerations behind *Baker* and its progeny.

Much as Plaintiffs try to convince us otherwise, the harms sought to be remedied, and the interests sought to be protected, by the *Baker* decision are not implicated in this case. *Baker* and its progeny stand for the constitutional policy that each person's vote in any given election is entitled to equal weight. *See id.* This policy is not implicated on the Plaintiffs' facts, where they have utterly failed to prove unequal votes within their particular voting pool or that their right to vote has been impaired, injured, or in any other way disturbed. *See Baker*, 369 U.S. at 208 (listing examples of harms sought to be remedied, including "dilution by a false tally, . . . refusal to count votes from arbitrarily selected precincts, . . . or by a stuffing of a ballot box."). Accordingly, we decline to adopt Plaintiffs' second *Baker* construction and reject this argument.

We acknowledge that it is arguably true that Plaintiffs' local government, as a result of the Act 47 Amendments, is restricted and regulated in a way different

19

than the governments of other Third Class Cities within the Commonwealth.

However, Plaintiffs once again miss the mark in their suggestion that this

automatically grants them standing merely because of their status as citizens of the

regulated municipality.  As the Defendants point out, a mere allegation that *some*

constitutional provision may have been violated is insufficient to confer

standing—the generalized grievance of an entire community without demonstrable

injury is insufficient to establish Article III standing. *See Common Cause of Penn.*

*v. Pennsylvania*, 558 F.3d 249, 259-60 (3d Cir. 2009) (plaintiffs' assertion that

they are alleging deprivation of personal rights under the First, Fifth, and

Fourteenth Amendments insufficient without allegations that "they directly

suffered an actual injury to those rights"). The Plaintiffs have failed to offer to this

Court anything other than conclusory allegations of constitutional injuries, and

their arguments are thus insufficient to support Article III standing.

Moreover, we believe the testimony and the submissions of both parties

quite clearly evince that the entity directly regulated and impacted by the Act 47

Amendments, and thus the appropriate party to challenge said statute in an Article

III court, is not the citizens of Harrisburg, or in this case, three of them, but instead

the City of Harrisburg itself. The injury here, if any there may be, is to the

municipality. Given the facts in the instant case, the law does not permit the

Plaintiffs to step into the shoes of their government to challenge legislation which the government itself does not desire to challenge. *See Storino*, 322 F.3d at 299 ("[A] litigant may assert *only* his own legal rights or interests, and can not 'rest a claim to relief on the legal rights or interests of third parties.'" (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

We cannot but conclude that Plaintiffs' standing arguments and entire cause of action are nothing more than a thinly-veiled attempt to litigate, on behalf of their municipal government, a case which Harrisburg's City Council and Mayor quite obviously do not wish the City to initiate. It speaks volumes that entirely missing from the Plaintiffs' argument is any mention of the undisputed fact that the City of Harrisburg has itself declined to challenge any aspect of Act 47, the Amendments, or the Recovery Plan. The critical point remains that the legislation challenged by the Plaintiffs does not limit the rights of the Plaintiffs, or even the rights of the citizens of Harrisburg at large, but instead limits the rights and authority of the municipality itself.

We are constrained to remind Plaintiffs of an obvious but important fact: This is a court of law. We are not a surrogate for Harrisburg's City Council or its Mayor, and it is not for us to alter the course they have charted, even if they did so by inaction. Likewise, we are not a substitute for the Pennsylvania General

21

Assembly or the Governor, and it would be imprudent for us to supplant our

judgment in place of their legislative and executive decisions when the injuries

alleged by the three citizens of Harrisburg before us are common to all residents of

the City. The appropriate remedy for Plaintiffs lies not with the courts but instead

at Harrisburg's City Hall, the State Capitol, or ultimately, the ballot box.

Appropriate judicial restraint obliges us to decline Plaintiffs' poorly disguised

invitation to act in place of their duly-elected government officials.

### 2.      Taxpayer Standing

Lastly, we turn to Plaintiffs' contention that a potential future increase in

earned income and real estate taxes grants the Plaintiffs taxpayer standing

sufficient to satisfy Article III justiciability requirements. As a threshold matter,

we note that nothing in the language of Act 47 or the Act 47 Amendments—the

actual statute challenged by Plaintiffs in their Complaint—imposes, directs, or

contemplates imposition of taxes; indeed, Act 47 expressly *prohibits* Defendant

Receiver from unilaterally imposing any tax on the citizens of Harrisburg. *See* 53

P.S. 11701.703 ("Restrictions.—The recovery plan *may not* do any of the

following: . . . unilaterally levy taxes." (emphasis added)).

Plaintiffs contend that this language is merely a metaphorical speed bump,

and that the Defendant Receiver can unilaterally increase taxes by overcoming the

"lowest level of judicial oversight," a writ of mandamus from the Commonwealth Court. (Doc. 55, pp. 14-15). Defendants counter that the Defendant Receiver is unable to levy or increase the earned income or real estate taxes without the approval of City Council. (Doc. 57, pp. 8-9).Without wading unnecessarily into the murky waters of statutory interpretation, we simply note that even adopting the Plaintiffs' proposed interpretation, the increase in taxes is subject to third-party oversight. (*Id.* (acknowledging that the Commonwealth Court must decide to issue a writ of mandamus before taxes can be increased)). A party has failed to establish standing where the alleged injury is "the result of the independent action of some third party not before the Court." *See Society Hill Towers*, 210 F.3d at 175-76.

The Plaintiffs' taxpayer standing argument also fails for one final, and critical, reason. The justiciability requirements of Article III prohibit plaintiffs from presenting hypothetical or conjectural causes of action to the court and require that an actual injury has been suffered, or an injury is imminent and certain, before a federal court will hear a case. *See Lujan*, 504 U.S. at 564 n.2. In *Lujan*, the Supreme Court advised that "[a]lthough 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is '*certainly* impending.'" *Id.* at 564 & n.2. The Third Circuit has

23

offered guidance, explaining that an alleged injury is too speculative where it cannot be explained without the use of the word "if." *See Reilly*, 664 F.3d at 43 (finding no standing where "we cannot now describe how [plaintiffs] will be injured in this case without beginning our explanation with the word 'if'").

Without citing to specific evidence of record, or supporting their argument with case law, the Plaintiffs contend, in conclusory fashion, that an increase in taxes would "far exceed[] the cognizable harm ordinarily sufficient to establish municipal taxpayer standing." (Doc. 55, p. 17). Plaintiffs contend that this "direct economic injury" suffices to establish taxpayer standing. (*Id.*). However, as in *Reilly*, the Plaintiffs are unable to articulate the nature of their alleged injury without the conditional words "if" or "may": *if* Defendant Receiver decides to increase taxes and *if* the Commonwealth Court issues the writ of mandamus (or, under the Defendants' interpretation, *if* the City agrees to independently increase taxes), the Plaintiffs will suffer economic injury[6] and poorer citizens unable to afford the tax *may* flee the city. This harm is speculative at best, and Plaintiffs

---

[6] We note that while all three Plaintiffs testified that they currently pay both earned income and real estate taxes in Harrisburg, (Tr. at 30:17-23, 37:22-23, 42:6-7, 48:4-7), only one testified to the impact an increase would have, and indeed, minimalized any alleged harm with respect to himself. Plaintiff Harris stated that an increase would not harm him individually, but might hurt other citizens. (Tr. at 31:25-32:2). Specifically, when asked whether he would "personally" be affected by a tax increase, Plaintiff Harris responded: "I won't starve, but it makes it difficult to help people and to function and to assist *them* to grow out - - to come out of this situation." (*Id.* (emphasis added)).

have failed to prove that any economic injury is imminent. Accordingly, the

Plaintiffs' arguments in support of taxpayer standing argument are hypothetical

and speculative and insufficient to support an Article III action.

## V.   CONCLUSION

This Court has no doubt that all three Plaintiffs are sincere and fully

engaged citizens of the City of Harrisburg. However, Plaintiffs' transparent

attempt at circumventing their duly-elected officials' decision not to bring an

action of this type highlights important justiciability concerns and, in this Court's

view, perfectly exemplifies the purpose of Article III standing requirements.

Permitting the Plaintiffs to proceed in this lawsuit would effectively give the green

light to any citizen aggrieved with his or her municipality's decision, considered

or otherwise, not to challenge state legislation binding upon it. It would, in

essence, permit a citizen to step into the shoes of his or her municipal, county, or

state government to bring suit on a government's behalf where its elected leaders

have affirmatively chosen not to do so. Floodgates would open, and potentially

frivolous lawsuits could abound. Judicial dockets would overflow as courts would

be called upon to serve as *de facto* municipal and state governments, the lines

between state and federal judicial and legislative branches would thus blur and

ultimately blend, and democratic policy and political authority would be entirely

undermined. Such a holding would, in itself, effect a diminution of the right to vote as it would permit the judiciary to potentially render the decisions of any elected official or government body immaterial at the challenge of a single disgruntled citizen unhappy with his or her governments' course of action.

For all of the legal reasons and practical consequences contemplated herein, we decline to accept Plaintiffs' invitation to extend Article III standing so far beyond its limits. We will thus deny the Plaintiffs' Motion for a Preliminary Injunction, grant the Defendants' Motion for Judgment on the Pleadings, and dismiss this action with prejudice. An appropriate order shall issue.